# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| DELANA M. CAMPBELL, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 3:15cv00363 |
| vs. | : |
| | : |
| CAROLYN W. COLVIN, | : District Judge Walter H. Rice |
| Commissioner Of The Social | : Chief Magistrate Judge Sharon L. Ovington |
| Security Administration, | : |
| | : |
| Defendant. | |

## REPORT AND RECOMMENDATIONS[1]

Plaintiff Delana M. Campbell brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income.

In October 2010, Administrative Law Judge (ALJ) Amelia G. Lombardo denied Plaintiff's applications based on her finding that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Doc. #5, *PageID*#s 167-80). The Social Security Administration's Appeals Council reversed and remanded ALJ Lombardo's decision, finding her decision "unclear regarding the nature and severity of [Plaintiff's] impairments," particularly her migraine headaches. *Id*. at 189. On remand, ALJ Lombardo again denied Plaintiff's applications on the ground that she was not under a disability. *Id*. at 67-78.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff brings the present case challenging ALJ Lombardo's second non-disability decision.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Motion to Remand (Doc. #12), Plaintiff's Objections to the Motion to Remand (Doc #14), the administrative record (Doc. #s 5, 6), and the record as a whole.  The parties agree that a remand to the Social Security Administration is warranted; they disagree over whether the remand should be for an award of benefits to Plaintiff or, as the Commissioner urges, for further administrative proceedings.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  "Generally, benefits may be awarded immediately 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'"  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. App'x 852, 865 (6th Cir. 2011) (quoting, in part, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).  "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."  *Faucher*, 17 F.3d at 176.

The Commissioner contends that the ALJ properly placed great weight on the assessment provided by psychologist Dr. Flexman and properly relied on his opinions when evaluating Plaintiff's residual functional capacity.  The Commissioner acknowledges that

2

the ALJ erred in some of her characterizations of the medical expert's testimony. Yet the appropriate remedy, from the Commissioner's viewpoint, is a remand so the ALJ can properly re-consider and re-discuss the medical expert's opinion.

Review of the record reveals that the evidence is overwhelming or strong concerning Plaintiff's disability, most significantly, migraines with anxiety, while contrary evidence is lacking. The overwhelming or strong evidence consists of the testimony during ALJ Lombardo's hearing in December 2013 provided by medical expert Dr. Carl Manders.

Dr. Manders is a neurologist and pain-management specialist. He began his testimony by generally discussing headaches and how physicians classify them. He then described symptoms generally associated with migraine. He explained that migraines usually occur unilaterally, in one side of the head or the other, and are associated with nausea and vomiting. Sometimes migraines are associated with neurological deficits, and migraine sufferers frequently experience an aura or hallucinations before a migraine begins. (Doc. #5, *PageID*#s 100, 104-05).

Dr. Manders next testified about his review of Plaintiff's medical records. He identified Plaintiff's primary problems as migraine along with anxiety. *Id*. at 112. He noted that the treatment for these problems is different "but sometimes overlap in their treatment makes it very difficult. But I don't think there's any question about the … reality of the, of the difficulty of the disorder. There doesn't seem to be any evidence that I thought at all of malingering. I think—but there is an emotional background, which is really significant, as well." *Id*. Dr. Manders continued, "Yeah, this is very difficult case, and—but I would feel very comfortable in saying this is migraine that is impacting significantly on the patient's

3

life and prognosis." *Id*. Most significantly, Dr. Manders opined: "My problems with this—when I look at this, and I simply say, this individual will not be able to work. She—she's going to miss more than two or three days a month …." *Id*. at 113.

The strong evidence also includes the opinions provided by Plaintiff's treating psychiatrist, Dr. Rahman. In June 2009, Dr. Rahman wrote a report and answered interrogatories in detail. *Id*. at 889-902. He reported that he had started treating Plaintiff in March 2006 for bipolar affective disorder and panic disorder. *Id*. at 893-94. He believed that the combination of her physical and mental impairments was greater than the sum of the parts. *Id*. at 894-895. He further opined that Plaintiff did not have good coping skills, and she had problems adapting to difficult circumstances. She was unable to perform any of the mental activities needed for work. *Id*. at 896-901. The combination of her impairments would render her unable to be prompt and regular in attendance. Work stress would cause her to decompensate. *Id*. at 896. Her distractibility limited her attention and concentration. She would need constant supervision and redirection. *Id*. at 897. She was unable to work in an emotionally stable manner. Social interaction caused her significant emotional lability and panic attacks. She was not reliable. *Id*. at 898. Bipolar disorder caused her distractibility limited her concentration and attention. Her comorbid pain and emotional tend to cause her to decompensate and she therefore need periods of rest. *Id*. at 899. She does not adapt well to change. Her panic attacks and emotional lability would be distracting to others. She could not sustain an ordinary wok routine without significant supervision. *Id*. at 900. She would withdraw and feel rejected when criticized. *Id*. at 901. Dr. Rahman opined that Plaintiff had marked restrictions in her daily activities, moderate restrictions in

4

her social functioning, and marked restrictions in her concentration and attention. *Id*. at 901-902.

In January 2013, Dr. Rahman provided a second report and answered a second set of interrogatories. His findings and opinions at this time were consistent with those he presented in 2009. *Id*. at 1509-1521.

Plaintiff's medical records reflect repeated efforts to treat her migraines. She sought treatment in the hospital emergency room on many occasions from 2009 onward. Plaintiff's counsel has accurately summarized these records at length, *id*. at 3260-67, and there is no need to repeat counsel's summary here. It suffices to recognize that this is part of the strong evidence of Plaintiff's disability when it is viewed in combination with the opinions provided by Dr. Manders, the findings and opinions provided by Dr. Rahman, and the vocational expert's testimony that a person missing more than one or two days per month, for several months, would be terminated from unskilled jobs. *Id*. at 118-19.

The contrary evidence upon which the Commissioner relies appears in the findings and opinions of one-time examining psychologist, Dr. Flexman who evaluated Plaintiff in March 2008. He diagnosed Plaintiff with mood disorder NOS,[1] anxiety disorder NOS, and depression NOS. Dr. Flexman concluded that Plaintiff had mild impairment in her ability to understand, remember, and carry out short, simple instructions; mild inability to make judgments for simple, work-related decisions; mild difficulties with concentration and sustained attention; moderate restriction for interacting with the public and with coworkers; mild restrictions for interacting with supervisors; and moderate restriction in her ability to

---

[1] NOS refers to a particular condition that is not otherwise specified in the Diagnostic and Statistical Manual of Mental Disorders (DSM). *See* DSM IV-TR, p. 13 (American Psychiatric Assoc. 2000).

5

respond appropriately to work pressures and changes in the work setting. (Doc. #5, *PageID#* 658). The main characteristics that raise doubt over the validity of Dr. Flexman's opinions are that he is a one-time examiner rather than a long-term treating psychiatrist, like Dr. Rahman, and Dr. Flexman evaluated and provided his report in 2008, without the opportunity to review the numerous records concerning Plaintiff's medical treatment from 2009 forward.

Lastly, this is an unusual case considering its age—more than 8 years old—together with a flawed non-disability decisions by an ALJ, which necessitated a remand Order from the Social Security Appeals Council followed by a second administrative hearing and second non-disability decision by the same ALJ. Give these circumstances, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter for even more administrative procedures. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for benefits after 2 remands and 3 administrative hearings and finding, "In light of the extensive opinions of treating physicians as to the severity of Gentry's psoriasis and psoriatic arthritis, we conclude that substantial evidence on the record as a whole supports a finding of total disability."); *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (other citation omitted)); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("Given the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted."); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)

("Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review.").

Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's Motion to Remand (Doc. #12) be GRANTED, in part, as to the requested remand to the Social Security Administration, and DENIED, in part, as to the request for further administrative proceedings;

2. The Commissioner's non-disability finding be reversed;

3. This matter be remanded to the Social Security Administration under Sentence 4 of 42 U.S.C. §405(g) for payment of benefits regarding Plaintiff Delana M. Campbell's January 7, 2008 (protectively filed) applications for Disability Insurance Benefits and Supplemental Security Income; and

4. The case be terminated on the docket of this Court.

November 7, 2016

                                                     s/Sharon L. Ovington
                                                      Sharon L. Ovington
                                       United States Magistrate Judge